# JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: TOWER PARK PROPERTIES, LLC,<br><br>Debtor. | Case No. 20-CV-06831-AB<br><br>Appeal from Bk. No. 2:20-AP-01010-BR |
| SUNSET COAST HOLDINGS, LLC,<br><br>Appellant,<br><br>v.<br><br>HUGHES INVESTMENT PARTNERSHIP LLC, a Delaware limited liability company; MH HOLDINGS II H, LLC, a Delaware limited liability company; MH LAND HOLDINGS I-A, LLC, a Delaware limited liability company; MH LAND HOLDINGS I-B, LLC, a Delaware limited liability company; MH LAND HOLDINGS I-C, LLC, a Delaware limited liability company; MH LAND HOLDINGS I-D, LLC, a Delaware limited liability company; and DOES 1-20,<br><br>Appellees. | **ORDER AFFIRMING** BANKRUPTCY COURT ORDERS |

1.

Plaintiff-Appellant Sunset Coast Holdings ("Plaintiff-Appellant") appeals two orders of the bankruptcy court. (Dkt. No. 27, "AOB"). Defendant-Appellees Hughes Investment Partnership LLC, MH Holdings II H, LLC, MH Land Holdings I-A, LLC, MH Land Holdings I-B, LLC, MH Land Holdings I-C, LLC, MH Land Holdings I-D, LLC ("Defendant-Appellees") filed an opposition, (Dkt. No. 28, "Opp'n"), and Appellant filed a reply (Dkt. No. 30, "Reply"). For the reasons stated below, the bankruptcy court's orders are affirmed.

## I.      BACKGROUND

Plaintiff-Appellant's appeal concerns the bankruptcy court's denial of Plaintiff-Appellant's Motion to Remand, ER at 1–3, and its grant of Defendant-Appellees' Motion to Dismiss, ER at 27–28. This action has a storied history, with the underlying issues beginning as far back as 2008. The Court relays the relevant facts as set forth in the parties' memoranda, the Excerpts of Record (Dkt. No. 27-1; 27-2; 27-3, "ER"), and the Supplemental Excerpts of Record (Dkt. Nos. 29-1; 29-2; 29-3; 29-4; 30-1, "SER").

### 1. The Property

Underlying this dispute is 1652 Tower Grove Drive, Beverly Hills (the "Property"). ER at 96 at ¶ 1. In the 1980s, Mark Hughes bought the Property. ER at 157. Before his death in 2000, Hughes established the Mark Hughes Family Trust (the "Trust"); after he died, the Property passed to the Trust for the benefit of his son, then a minor. ER at 157–58. In September 2004, Tower Park Properties, LLC ("Tower Park" or "Debtor") bought the Property from the Trust. ER at 158. The Trust, through Defendant-Appellees, financed 100% of the sale and loaned more to finance development. ER at 158. Defendant-Appellees initially made three loans to Tower Park and an affiliate in 2004 to 2006 (the "Initial Loans"), all secured by separate deeds of trust against the Property. ER at 158. Tower Park defaulted on the Initial Loans when they matured in 2007. ER at 146. Defendant-Appellees recorded

notices of default against the Property.  ER at 146.  On July 11, 2008, Tower Park filed the underlying chapter 11 bankruptcy case (Case No. 2:08-bk-20298-BR).  ER at 159.  Defendant-Appellees' alleged liens against the Property totaling approximately $60 million.  ER at 147.  La Jolla Capital Investors, LLC ("LJCI") also held a deed of trust against the Property totaling approximately $11 million.  ER at 147.

**2. Tower Park's Bankruptcy and the Plan of Reorganization**

On April 1, 2010, the bankruptcy Court confirmed Debtor's plan of reorganization ("Plan").  ER at 147; 179–81.  Upon confirmation, all property of the bankruptcy estate, including the Property, revested in the reorganized Debtor under the terms of the Plan.  ER at 159-60 ¶¶19–20; ER at 207–08.  Under the Plan, Defendant-Appellees agreed to lend Debtor up to $7 million in exit financing, ("Exit Financing"), which was to be secured by a fourth deed of trust against the Property ("Fourth Loan," or "Exit Loan," and together with the Initial Loans, "Property Loans").  The Exit Financing was critical to Debtor's Plan.  ER at 147.  In exchange for this additional financing, Defendant-Appellees required that LJCI, whose lien on the Property was already junior to the liens securing the three Initial Loans, subordinate its lien to Defendant-Appellees' Fourth Loan as well.  ER at 96, 100 at ¶¶ 3, 26.  Tower Park, Defendant-Appellees, and LJCI entered into an Intercreditor and Subordination Agreement ("Intercreditor Agreement") by which LJCI subordinated to the new Exit Loan.  ER at 99–100 at ¶¶ 25–26.

Tower Park's Plan included a mechanism, named the "Court Deed Option," which enabled Defendant-Appellees to obtain the Property on an expedited basis if Tower Park defaulted on the Exit Loan or the Initial Loans. ER at 100 at ¶ 28.  If Defendant-Appellees successfully exercised the Court Deed Option, the Property was to be transferred to Defendant-Appellees subject to a right of redemption in favor of LJCI (the "Right of Redemption").  ER at 100 at ¶ 30, 183–84, 402.  Although Tower Park defaulted, the Court Deed Option was never successfully exercised.

3.

**3. Post-Confirmation Transfer and Defendant-Appellees' Foreclosure Proceedings**

Following confirmation of the Plan in April 2010 (*see* ER at 214-37, the "Confirmation Order"), Tower Park again defaulted and new disputes arose, resulting in further adversary proceedings in the bankruptcy court. *See* Adv. Pro. No. 2:11-ap-02448-BR (Bankr. C.D. Cal.); Adv. Pro. No. 2:12-ap-01803-BR (Bankr. C.D. Cal.); Adv. Pro. No. 2:12-ap-01485-BR (Bankr. C.D. Cal.). During this period, Tower Park entered into a relationship with Secured Capital Partners, LLC ("SCP") as a source of funding. ER at 102 at ¶ 36. After learning of an unauthorized transfer of the Property from Tower Park to SCP, Defendant-Appellees filed a complaint in Superior Court in October 2016 to foreclose judicially on the lien securing the Fourth Loan (LASC Case No. BC636286, the "Foreclosure Action"). ER at 518–19. Defendant-Appellees also commenced a parallel non-judicial foreclosure as to the Fourth Loan, but that process was halted when SCP obtained a preliminary injunction in early 2017. ER at 519. By orders entered in December 2018, the Superior Court granted Defendant-Appellees' motion for summary adjudication of its judicial foreclosure cause of action against SCP as to the Fourth Loan and dissolved the preliminary injunction. SER at 146–54. In January 2019, Defendant-Appellees again initiated non-judicial foreclosure proceedings, this time as to all four of their deeds of trust. ER at 104 at ¶ 46. On May 29, 2019, SCP filed a chapter 11 bankruptcy petition; the case was assigned to Judge Russell because of its relationship to the initial Tower Park bankruptcy case. Case No. 2:19-bk-16243-BR (Bankr. C.D. Cal.).

Some time and other disputes later, a trustee's foreclosure sale took place. SER 162. Defendant-Appellee MH Land Holdings I-D, LLC acquired title to the Property through that foreclosure sale, not through exercise of the Court Deed Option in the Plan. SER at 162.

//

4.

**4. Filing and Removal of this Action**

On December 18, 2019, Plaintiff-Appellant filed the operative Complaint commencing this action (the "Action"), asserting that it had received from SCP an assignment of LJCI's rights regarding the Property.  ER at 97, 105 at ¶¶ 7, 57. Plaintiff-Appellant's Complaint included four causes of action: (1) breach of the Intercreditor Agreement, (2) a breach of implied duty of good faith and fair dealing with respect to the Intercreditor Agreement, (3) equitable and/or promissory estoppel to preclude Defendant-Appellees from denying that Plaintiff-Appellant has the Right of Redemption, and (4) seeking declaration that Plaintiff-Appellant is entitled to the Right of Redemption.  ER at 97–109.

On January 17, 2020, Defendant-Appellees removed the Action to the bankruptcy court.  ER at 145–55.  Two weeks later, Defendant-Appellees moved to dismiss the Complaint with prejudice ("Motion to Dismiss") and to expunge a *lis pendens* that Plaintiff-Appellant had recorded on the Property.  ER at 510–29; ER at 81-82.  Meanwhile, Plaintiff-Appellant filed a motion to remand the Action to state court (the "Motion to Remand").  SER at 001-054.  On March 24, 2020, Judge Russell issued an oral ruling denying the Motion to Remand.  ER at 20 at 17:1-11.  On July 7, 2020, Judge Russell dismissed the Complaint with prejudice and expunged Plaintiff-Appellant's *lis pendens*.  ER at 27–65.  This appeal of the denial of the Motion to Remand and the grant of the Motion to Dismiss followed.  ER at 66–75.

## II.     STANDARD OF REVIEW

A district court may hear appeals from "final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges." 28 U.S.C. §158(a).  Issues of jurisdiction and dismissal for failure to state a claim are questions of law that are reviewed *de novo.  Audette v. ILWU,* 195 F.3d 1107, 1111 (9th Cir.1999); *N. Slope Borough v. Rogstad* (*In re Rogstad*), 126 F.3d 1224, 1228 (9th Cir.1997).

Equitable remand decisions under 28 U.S.C. § 1452(b) are reviewed for abuse of discretion. *McCarthy v. Prince* (*In re McCarthy*), 230 B.R. 414, 416 (9th Cir. BAP 1999). The denial of leave to amend is reviewed for an abuse of discretion. *United States ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667, 676 (9th Cir. 2018). "A court abuses its discretion if it bases its decision on an erroneous view of the law or on clearly erroneous factual findings." *Id.* (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990)). *See also United States v. Hinkson,* 585 F.3d 1247, 1261-62, n.20 (9th Cir. 2009) (*en banc*) (holding that a bankruptcy court's factual findings should be affirmed unless it is determined that those findings are illogical, implausible, or without support in inferences that may be drawn from the facts in the record).

## III.   DISCUSSION

### A. The Order Denying Plaintiff-Appellant's Motion to Remand is <u>AFFIRMED</u>

Plaintiff-Appellant's appeal of Judge Russell's denial of the Motion to Remand presents the questions whether the bankruptcy court had the jurisdiction under 28 U.S.C. § 1334 that is prerequisite to removal under 28 U.S.C. § 1452(a), and whether the bankruptcy court correctly determined the equitable issues involved in remand under 28 U.S.C. § 1452(b).

### 1.  Mandatory Remand under § 1452(a)

Plaintiff-Appellant contends that the Complaint pleads only causes of action under state law and does not require Judge Russell to interpret his Confirmation Order or the Plan. As such, Plaintiff-Appellant argues that the Action belonged in state court because it was not a "core" proceeding arising out of title 11 nor was it "related to" the Tower Park bankruptcy proceeding. AOB at 12–16; Reply at 2–4. The Court disagrees.

A civil action may be removed under § 1452(a) only if the district court (of which the bankruptcy court is a "unit") has jurisdiction under section 1334 providing

for federal bankruptcy jurisdiction.  28 U.S.C. §§ 1334 & 1452(a).  *In re Miles*, 294 B.R. 756, 762 (B.A.P. 9th Cir. 2003), aff'd, 430 F.3d 1083 (9th Cir. 2005).  Under 28 U.S.C. § 1334, bankruptcy courts have subject matter jurisdiction over proceedings "arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. § 1334(b)).  Post-confirmation, a bankruptcy court has "related to" jurisdiction if there is a "close nexus . . . between the current action and the original bankruptcy proceeding."  *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1191 (9th Cir. 2005).  "[A] close nexus exists between a post-confirmation matter and a closed bankruptcy proceeding sufficient to support jurisdiction when the matter 'affect[s] the interpretation, implementation, consummation, execution, or administration of the confirmed plan.'"  *In re Wilshire Courtyard*, 729 F.3d at 1289 (quoting *In re Pegasus Gold Corp.*, 394 F.3d at 1194).  Because this Action is post-confirmation, the Court will assess whether there is a "close nexus" between the Action and the original Tower Park bankruptcy proceeding.

Here, Plaintiff-Appellant's Complaint alleged that Defendants-Appellees (1) breached the Intercreditor Agreement by "deliberately [choosing] to pursue statutory foreclosure proceedings to avoid the Court Deed Option and unreasonably inflate[] payoff demands as bad faith tactics to deny the holder of LJCI's rights the [Right of Redemption];" (2) by denying that the Right of Redemption exists and preventing Plaintiff-Appellant from redeeming the Property under the Intercreditor Agreement's terms; and (3) making false promises to LJCI regarding the Right of Redemption and its rights under the Intercreditor Agreement designed to induce LJCI to subordinate its liens to those of the Defendant-Appellees.  ER at 99, 104–05, 107–08 at ¶¶ 22–24, 52, 55-56, 68-70.  Plaintiff-Appellant additionally sought a declaration that the Right of Redemption permitted Plaintiff-Appellant to buy the Property from the Defendant-Appellees in accordance with the Intercreditor Agreement's terms.  ER at 97, 108–09 ¶¶ 7, 74.

1      Ultimately, Plaintiff-Appellant asserts that it is entitled to invoke the Right of

2  Redemption: an express right created under the Plan, the Intercreditor Agreement, and

3  other documents executed in connection with the Plan. ER at 183–84, 402; SER at

4  561. Before a Right of Redemption could arise, however, the documents state that the

5  parties first had to come before the bankruptcy court and obtain successful invocation

6  of the Court Deed Option (a form of relief created in the Plan), pursuant to which the

7  Property would be transferred to Defendant-Appellees. ER at 183, 402. Indeed,

8  Section 4 of the executed Intercreditor Agreement entitled "Right of Redemption,"

9  states: "The Plan provides . . . [t]he collateral so conveyed pursuant to the Court Deed

10 Option shall be transferred, as set forth in the plan and the Exit Loan Documents, . . .

11 subject to a right of redemption in favor of LJCI . . . ." ER at 402.

12      Plaintiff-Appellant's claims beg the question of whether the Court Deed Option

13 under the Plan was Defendant-Appellees' exclusive remedy for obtaining possession

14 of the Property. ER at 104–05. Thus, the Court finds that since Plaintiff-Appellant's

15 claims could reasonably be resolved through review, consideration and interpretation

16 of the Plan, the Intercreditor Agreement and other agreements executed in Tower

17 Park's bankruptcy case (*e.g.*, the Exit Financing documents), there is a "close nexus"

18 between the Action and the closed bankruptcy proceeding sufficient to support Judge

19 Russell's jurisdiction. Judge Russell approved and confirmed the Plan (which created

20 the Court Deed Option) and the form Intercreditor Agreement[1] during the course of

21 Tower Park's bankruptcy proceeding.  When assessing the intent of the contracting

22 parties, which the Complaint questions, who better to interpret these documents than

23 the bankruptcy judge who approved them in the first place? *See, e.g.*, *see also in re*

24 *DPH Holdings Corp.*, 553 B.R. 20, 25-26 (Bankr. S.D.N.Y. 2016) ("For purposes of

25

26 [1] Notably, the form Intercreditor Agreement approved by Judge Russell is
27 substantively identical to the Intercreditor Agreement executed by the parties two
   months later. *Compare* ER at 351-66 (April 2010 version) with ER at 397-419 (June
28 2010 version).

8.

interpreting a confirmed chapter 11 plan, all documents which were confirmed together to form the cont[r]act are added to the plan itself. Thus, the agreements referred to in the relevant Plan provisions . . . are part of the contract set forth in the Plan and need to be construed with it as a whole.").

Thus, the bankruptcy court had "related to" jurisdiction under § 1334.  Judge Russell did not err in denying remand under § 1452(a).

## 2. Equitable Remand

Having concluded that the civil action was correctly removed, the question becomes whether the bankruptcy court abused its discretion when it denied to remand the Action on equitable grounds as permitted by § 1452(b).

Courts consider up to fourteen factors in determining whether to remand a "related to" case on equitable grounds, including: "(1) the effect or lack thereof on the efficient administration of the estate if the Court recommends [remand or] abstention; (2) extent to which state law issues predominate over bankruptcy issues; (3) difficult or unsettled nature of applicable law; (4) presence of related proceeding commenced in state court or other non-bankruptcy proceeding; (5) jurisdictional basis, if any, other than § 1334; (6) degree of relatedness or remoteness of proceeding to main bankruptcy case; (7) the substance rather than the form of an asserted core proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden on the bankruptcy court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; (12) the presence in the proceeding of non-debtor parties; (13) comity; and (14) the possibility of possibility of prejudice to other parties in the action." *Federal Home Loan Bank of Chicago v. Banc of America Securities LLC,* 448 B.R. at 525, *citing and quoting, In re Enron Corp.,* 296 B.R. at 508 and n. 2.  "Because [28 U.S.C. §] 1452(b) affords 'an

unusually broad grant of authority,' any one of the relevant factors may provide a sufficient basis for equitable remand." *Federal Home Loan Bank of Chicago v. Banc of America Securities LLC,* 448 B.R. at 525, *citing, In re Roman Catholic Bishop of San Diego,* 374 B.R. at 761. Nevertheless, "[w]hile these factors assist a court's remand decision, they do not control it." *In re Roman Catholic Bishop of San Diego,* 374 B.R. at 762.

Although the order denying remand does not expressly provide the bankruptcy court's reasoning behind denying equitable remand, it does state that the court considered the memoranda and the arguments presented at the hearing on March 24, 2020. ER 1–3. The memoranda before the bankruptcy court present the applicable legal standards and in relying on such standards, Judge Russell found "the history does matter in this case and also it does require interpretation of the plan and my orders relating thereto and even after." ER at 20. Given the storied history of this case, Judge Russell's extensive involvement in the terms and documents at issue, and the "close nexus" between the Action and the Tower Park bankruptcy proceeding, this Court cannot say that Judge Russell unreasonably ignored any of the above equitable factors nor that his findings were illogical, implausible, or without support.

Thus, the Court finds that Judge Russell did not abuse his discretion in denying equitable remand.

### 3. Judicial Estoppel

Plaintiff-Appellant further argues that the bankruptcy court abused its discretion by not applying judicial estoppel to the question of jurisdiction, given Defendant-Appellees' prior remand motions. AOB at 16.

The Court considers three factors in determining whether to apply the doctrine of judicial estoppel: (1) whether a party's later position is "clearly inconsistent" with its earlier position, (2) whether the first court accepted the party's earlier position, and (3) whether the party seeking to assert an inconsistent position would receive an unfair

advantage if not estopped.  *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001); *Becker v. Wells Fargo Bank, Nat. Ass'n*, No. CIV. 2:12-1742 WBS, 2012 WL 5187792, at *3 (E.D. Cal. Oct. 18, 2012).

The bankruptcy court entered orders remanding two adversary proceedings, Adv. Proc. Nos. 16-1485 and 18-1039, removed by SCP and Debtor, respectively, after Defendant-Appellees sought remand.  ER at 506–09.  In these prior motions, Defendant-Appellees were seeking remand of the Foreclosure Action, which sought judicial foreclosure under state law.  There, Defendant-Appellees took the position that the Foreclosure Action should be remanded because Debtor had already transferred the Property to SCP and because Debtor was not a party to the removed claims.  ER at 445; 488.  In its opposition to this Motion to Remand, Defendant-Appellees assert that these facts are irrelevant to the question of jurisdiction.

Due to the nature of the Foreclosure Action, questions of who owned the Property, when the Plan was confirmed, and whether Debtor was a party to the action were relevant to the question of "related to" jurisdiction.  Here, however, Plaintiff-Appellant is seeking remand of *this* Action, which asks the bankruptcy court to interpret unique mechanisms related to the Plan, the Intercreditor Agreement, the Court Deed Option, and other agreements related to the Tower Park bankruptcy proceeding.  Resolution of Plaintiff-Appellant's claims in this Action do not hinge on the same facts and questions (*e.g.*, who owns the Property) as the Foreclosure Action.  Thus, Defendant-Appellees' positions are not so "clearly inconsistent" to be estopped.  Thus, Judge Russell did not abuse his discretion by not applying judicial estoppel to the Motion to Remand in this Action.

### 4.  Law of the Case

Plaintiff-Appellant also argues that Judge Russell abused his discretion when he ignored the "law of the case" in granting the prior remand motions and denying this one.  AOB at 19.

11.

Such a doctrine generally precludes a court from reconsidering an issue previously decided by the same court, or a higher court, in the same case. *Genesis Ins. Co. v. Nat'l Union Fire Ins. Co.*, 783 F. App'x 683, 685 (9th Cir. 2019). For the doctrine to apply, the issue must have been decided explicitly or by necessary implication in the previous disposition. *Id.*

As discussed above, Defendant-Appellees' motion to remand the Foreclosure Action involved a state law claim for judicial foreclosure. This Action involves Plaintiff-Appellant's Right of Redemption, a right which arises from the Plan. The question of whether the Right of Redemption exists was not explicitly or implicitly decided in previous dispositions. Judge Russell did not abuse his discretion by not applying the "law of the case" doctrine.

Accordingly, the bankruptcy court correctly denied Plaintiff-Appellant's Motion to Remand. Judge Russell's ruling with respect to jurisdiction is therefore **AFFIRMED**.

## B. The Order Granting Defendant-Appellees' Motion to Dismiss with Prejudice is <u>AFFIRMED</u>

Next, Plaintiff-Appellant appeals the bankruptcy court's dismissal with prejudice of its claims against Defendant-Appellees for breach of contract and the covenant of good faith and fair dealing. AOB at 24.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. The issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). When evaluating a Rule 12(b)(6) motion, the district court must accept all material

allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994).

### 1. Breach of Contract

Plaintiff-Appellant argues that the bankruptcy court erroneously dismissed its breach of contract claim because the bankruptcy court's reading of the contract would have made the Right of Redemption in the Intercreditor Agreement "illusory." AOB at 25. The Court disagrees and affirms the bankruptcy court.

The elements of a cause of action for breach of contract are: (1) the existence of the contract; (2) performance by the plaintiff or excuse for nonperformance; (3) breach by the defendant; and (4) damages. *Neumayer v. Allstate Ins. Co.*, 2016 WL 4257691, at *2 (C.D. Cal. Aug. 9, 2016), *aff'd*, 765 F. App'x 321 (9th Cir. 2019) (quoting *Wall St. Network, Ltd. v. N.Y. Times Co.*, 164 Cal. App. 4th 1171, 1178 (2008)). A resolution of contractual claims on a motion to dismiss may be proper if the terms of the contract are unambiguous, *Monaco v. Bear Stearns Residential Mortg. Corp.*, 554 F. Supp. 2d 1034, 1040 (C.D. Cal. 2008), but a motion to dismiss should not be granted where the contract "leaves doubt as to the parties' intent." *Consul Ltd. v. Solide Enters., Inc.,* 802 F.2d 1143, 1149 (9th Cir.1986); *see Westlands Water Dist. v. U.S. Dep't of Interior,* 850 F. Supp. 1388, 1408 (E.D.Cal.1994). A contract provision is ambiguous where it is capable of two or more reasonable interpretations. *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.,* 5 Cal.4th 854, 867, 21 Cal.Rptr.2d 691, 855 P.2d 1263 (1993). Mutual intention of the parties at the time the contract is formed governs interpretation of the contract. *Id.* That intent "is to be inferred, if possible, solely from the written provisions of the contract," and "reliance on the common understanding of language is bedrock." *Id.*; *see* Cal. Civ. Code §§ 1636, 1638, 1639. "[L]anguage in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract." *Bank of the West v. Superior Court,*

2 Cal.4th 1254, 1265, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992). *See also Trustees of So. Cal. IBEW v. Flores,* 519 F.3d 1045, 1047 (9th Cir. 2008).

This Court agrees with the bankruptcy court that the terms of the Plan and the Intercreditor Agreement are unambiguous with respect to the Right of Redemption. ER at 59 at 31:14-16 ("[The Right of Redemption] just doesn't exist because the -- that [Court Deed] option was never exercised. It's really that simple."). The Plan and Intercreditor Agreement are clear that the Right of Redemption applied only to "collateral so conveyed pursuant to the Court Deed Option," and that option was "in addition to all other rights and remedies of [Defendant-Appellees] under the Exit Loan Documents or at law or equity." ER at 183-86 ER at 402; *see also* ER at 184. Thus, by these express terms, LJCI had no Right of Redemption unless Defendant-Appellees obtained relief under the Court Deed Option. ER at 183–84, 402. Defendant-Appellees did not exercise the Court Deed Option; nor did the terms require them to do so. ER at 183-86. By the plain terms of the Plan and the Intercreditor Agreement, no Right of Redemption existed. Ergo, Plaintiff-Appellant is unable to allege breach based on an entitlement to invoke such right.

Plaintiff-Appellant provides no alternative reading but states that this reading of the Right of Redemption would render such right "illusory" and unenforceable given an apparent lack of consideration. However, this Court agrees with the bankruptcy court and Defendant-Appellees that there is indeed consideration. First, by agreeing to the Right of Redemption formulation, LJCI did not "give up" its lien, but subordinated its lien to the Exit Loan as part of the agreed Exit Financing. ER at 399. Second, under the Plan and Intercreditor Agreement, Defendant-Appellees agreed to provide up to $7 million in Exit Financing to pay off creditors, to allow for improvements to the Property, and to pay LJCI $1 million as part of a settlement agreement between Tower Park and LJCI. ER at 180, 398. Thus, the Plan and the Intercreditor Agreement are supported by adequate consideration.

Additionally, Plaintiff-Appellant argues that even if a guaranteed right of redemption is not express, an *implied* right is facially plausible.  AOB at 28.  However, "plausible" is a higher standard than "possible" and nothing in the Plan, the Confirmation Order, or the Intercreditor Agreement supports the conclusion that there is an implied right of redemption irrespective of successful exercise of the Court Deed Option.  Implying a right of redemption no matter what remedy Defendant-Appellees sought contradicts the express language of the Plan and Intercreditor Agreement.  Neither this Court nor the bankruptcy court can rewrite contracts to "add a nonexistent contract term."  *AdTrader, Inc. v. Google LLC*, 2018 WL 3428525, at *11 (N.D. Cal. 2018).

Lastly, Plaintiff-Appellant argues that Judge Russell erroneously barred statements made by Conrad Klein, one of the three former trustees of the Trust, to Daren Barone of LJCI.  *See* ER at 99 at ¶¶ 21–25.  Such statements allegedly suggest that the parties intended for a right of redemption irrespective of the Court Deed Option's exercise.  AOB at 30.  However, as stated above, there is no ambiguity in the fully integrated Plan or Intercreditor Agreement with respect to the Right of Redemption, and thus no basis to look beyond its text.  *In re Platinum Oil Props., LLC*, 465 B.R. 621, 647 (Bankr. D.N.M. 2011) ("Courts apply the parol evidence rule to interpret a confirmed chapter 11 plan . . . ."); *In re Victory Markets, Inc.*, 221 B.R. 298, 303 (B.A.P. 2d Cir. 1998) ("Unless some ambiguity is to be found within the plan itself, the Court has no basis to look beyond its text.").  Judge Russell did not err in barring these statements.

Accordingly, because no Right of Redemption existed after Defendant-Appellees elected not to exercise the Court Deed Option, Plaintiff-Appellant cannot state a breach of contract claim based on a theory that it was entitled to invoke such right.  Judge Russell did not err in dismissing Plaintiff-Appellant's breach of contract claim.

1

### 2. Breach of the Implied Duty of Good Faith and Fair Dealing

2
3
Lastly, Plaintiff-Appellant argues that the bankruptcy court was wrong that the

4
implied duty of good faith and fair dealing contradicts the Intercreditor Agreement.

AOB at 31.  The Court disagrees and affirms the bankruptcy court.

5
6
Plaintiff-Appellant alleges that Defendant-Appellees "had an obligation to

7
pursue any default against [Tower Park] and any effort to recover the Property in a

8
manner that honored their promises and obligations to LJCI and its successors."  ER at

9
107 at ¶ 65.  But as discussed, there is no basis for an implied right of redemption *and*

10
Defendant-Appellees had no obligation under the terms of either the Intercreditor

11
Agreement or the Plan to pursue the Court Deed Option in the event of a default.  ER

12
at 185–86, 402.  As noted by Plaintiff-Appellant, the covenant of good faith and fair

13
dealing will not be implied to vary the terms of an express, unambiguous contract

provision.  *Third Story Music, Inc. v. Waits*, 41 Cal. App. 4th 798, 808 (1995).

14
15
The Court agrees with Defendant-Appellees that Plaintiff-Appellant is

16
attempting to use the covenant of implied good faith and fair dealing to impose duties

17
beyond, and in conflict with, those incorporated in the Intercreditor Agreement and

Plan.  Judge Russell did not err in dismissing this claim.[2]

18
19
### 3. Leave to Amend

20
The bankruptcy court did not abuse its discretion when dismissing without

21
leave to amend Plaintiff-Appellant's claims.  The bankruptcy court's decision was

22
based on a lengthy oral argument and comprehensive briefing, which Judge Russell

23

24
[2] Judge Russell also dismissed Plaintiff-Appellant's claims for promissory estoppel
and declaratory relief.  ER 27–28.  Plaintiff-Appellant did not raise these claims in its

25
AOB or its Reply.  Accordingly, Plaintiff-Appellant has waived any argument on

26
appeal that dismissal of its promissory estoppel and declaratory relief claims were

erroneous.  *United States v. Kama*, 394 F.3d 1236, 1238 (9th Cir. 2005) ("Generally,

27
an issue is waived when the appellant does not specifically and distinctly argue the

28
issue in his or her opening brief.").

read "several times."  ER at 37.  Given the express, unambiguous terms discussed above, this Court cannot say that Judge Russell erred when he found that Plaintiff-Appellant cannot offer any additional set of facts demonstrating that Defendant-Appellees breached the Intercreditor Agreement, the Plan, or the implied covenant of good faith and fair dealing.  Thus, the denial of leave to amend as to Plaintiff-Appellant's claims was not based on an "erroneous view of the law or on clearly erroneous factual findings" and must be affirmed.  *See United States ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667, 676 (9th Cir. 2018).

With respect to Plaintiff-Appellant's desire to add an unjust enrichment claim to its Complaint, Plaintiff-Appellant did not assert such a claim or allege that Defendant-Appellees were unjustly enriched in its initial Complaint.  Thus, Plaintiff-Appellant may not make such a claim in its opposition to the Motion to Dismiss.  *See A.C.C.S. v. Nielsen*, 2019 WL 7841860, at *7 (C.D. Cal. 2019) ("[P]laintiff's statements in his opposition brief cannot amend the Complaint.").

Accordingly, Judge Russell's order dismissing Plaintiff-Appellant's Complaint without leave to amend is **AFFIRMED**.

## IV.    CONCLUSION

For the foregoing reasons, the bankruptcy court's Orders are **<u>AFFIRMED</u>**.
**IT IS SO ORDERED.**

Dated:  March 29, 2021

_____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE

CC: BK Court

17.